UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    **FILED**

```
--------------------------------------------------------------X
FORTIS CORPORATE INSURANCE                          :
(as subrogee of TRADE ARBED, INC.),
                                                    :
                            Plaintiff,
                                                    :
        -against-
                                                    :

M/V LANGESUND, her engines, boilers, tackle,        :
appurtenances, etc. in rem, LANGESUND, D.A.,
ATLANTIC ICE CARRIERS, B.V., LOGISTEC               :
CONNECTICUT, INC., and LOGISTEC USA, INC.   :
in personam,
                                                    :
                            Defendants.
--------------------------------------------------------------
```

2004 JAN 26  P 2: 37

U.S. DISTRICT COURT
HARTFORD, CT.
3:02CV1991 (CFD)

January 23, 2004

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY
## PENDING ARBITRATION AND MOTION TO DISMISS CROSS-CLAIMS

ORAL ARGUMENT REQUESTED/
TESTIMONY NOT REQUIRED

## PRELIMINARY STATEMENT

The Defendants, Langesund, D.A. (hereinafter "Langesund") and Atlantic Ice Carriers, B.V. (hereinafter "AIC"), by their undersigned counsel submit the within Memorandum of Law in support of their motion to stay the claims of Plaintiff Fortis Corporate Insurance (hereinafter "Fortis" or "Plaintiff") pending arbitration in the City of London, England, and also in support of their motion to dismiss cross-claims of Logistec Connecticut, Inc. and Logistec USA, Inc. (hereinafter collectively "Logistec"). To the extent that certain bills of lading covering the cargo's shipment incorporate a charter party's arbitration clause, this matter should be stayed pending arbitration. In addition, Logistec's cross-claims against Langesund and AIC for indemnity and contribution should be dismissed because they are not justiciable at this time.

## STATEMENT OF FACTS

This action stems from alleged loss and/or damage to Plaintiff's cargo of steel wide flange I-Beams (hereinafter "the cargo") shipped onboard the M/V "LANGESUND" (hereinafter "the vessel") from Pasajes, Spain to New Haven, Connecticut in late 2001. On or about November 27, 2001, the Master of the M/V "LANGESUND" issued seven bills of lading covering the shipment of Plaintiff's cargo. (See Declaration of Brent Z. Skolnick ¶ 1, Exhibit "1").[1] These bills, issued on a standard CONGENBILL Edition 1978 form, name Plaintiff's subrogor Trade Arbed, Inc. (hereinafter "Trade Arbed") as consignee of the shipment. (Skolnick Dec. ¶ 1, Exh. "1"). Under the "Conditions of Carriage" set forth in the bills of lading, the first clause provides that "[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated." (Skolnick Dec. ¶ 2, Exh. "2"). The bills also state on their face that they are "TO BE USED WITH CHARTER-PARTIES" and specifically

---

[1]      Hereinafter abbreviated as (Skolnick Dec. ¶ __, Exh. __).

reference a "CHARTER-PARTY dated 13th NOVEMBER 2001." (Skolnick Dec. ¶ 1, Exh. "1") (capitalization in original).

The referenced November 13, 2001 charter party ("charter party"), on the standard GENCON form, is between AIC as the vessel owners and Aceralia Perfiles Olaberria, S.L. and Aceralia Perfiles Madrid, S.L. as charterers.[2] (Skolnick Dec. ¶ 3, Exh. "3"). Clause 32 of the charter party provides in full:

> Any dispute arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament in London of two arbitrators, who shall be commercial men carrying on business in London. One to be appointed by each of the parties with power to such arbitrators to appoint and umpire whose decision shall be final and binding upon both parties. English law shall govern interpretation/execution of this contract.

(Skolnick Dec. ¶ 3, Exh. "3").

## PROCEDURAL HISTORY

In its Amended Verified Complaint, Plaintiff asserts claims under the Carriage of Goods by Seas Act ("COGSA"), 46 U.S.C. 1400 *et seq.*, against the vessel *in rem* and against Langesund and AIC *in personam* as the vessel's owners, charterers, or managers. (Skolnick Dec. ¶ 4, Exh. "4"). Plaintiff also asserts claims against Co-Defendants Logistec, (Skolnick Dec. ¶ 4, Exh. "4"), which, in turn, assert cross-claims against Langesund and AIC for indemnity and contribution. (Skolnick Dec. ¶ 5, Exh. "5"). Langesund and AIC have similarly cross-claimed against Logistec. (Skolnick Dec. ¶¶ 6-7, Exh. "6" through and including "7").

In their respective Answers, Langesund and AIC admit that they are the vessel's owners and disponent owners, respectively. (Skolnick Dec. ¶¶ 6-7, Exh. "6" through and including "7"). In its Answer, Langesund also asserts as an affirmative defense that "[t]he terms of the bill of lading, tariff and/or other governing contracts between the parties require that this matter be

---

[2]    Aceralia Perfiles Olaberria, S.L. and Aceralia Perfiles Madrid, S.L. are not named as parties to this litigation.

heard in a forum other than this Court." (Skolnick Dec. ¶ 6, Exh. "6"). AIC asserts the same

affirmative defense in its Answer and adds that this matter is subject to arbitration in London,

England. (Skolnick Dec. ¶ 7, Exh. "7"). While Langesund has made initial disclosures as

required by Federal Rule of Civil Procedure 26, the parties have not engaged in any substantive

discovery.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS AGAINST LANGESUND AND AIC SHOULD BE STAYED PENDING ARBITRATION

Plaintiff's action should be stayed in favor of London arbitration to the extent that the

bills of lading effectively incorporate the charter party's arbitration clause. Section 3 of the

Federal Arbitration Act ("FAA"), entitled "Stay of proceedings where issue therein referable to

arbitration," governs this motion and provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. See also 9 U.S.C. § 2 ("[a] written provision in any maritime transaction or

a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction . . . shall be valid,

irrevocable, and enforceable. . . .").

**A.** **The bills of lading incorporate the charter party's arbitration clause**

The bills of lading, through their incorporation of the charter party's terms and

conditions, evince an agreement to arbitrate as required under Section 3 of the FAA.  Under

COGSA, a bill of lading sets forth the contractual terms between the parties to a shipment.

Notice of such terms is presumed and the parties are bound by the bill of lading's provisions.

*See Southern Pacific Transp. Co. v. Commercial Metals*, 456 U.S. 336, 342-243 (1982);

*Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow*, 12 F.3d 58, 61 (5th Cir. 1994);

*Givaudan Delawanna v. Blijdendijk*, 91 F. Supp. 663, 666, 1950 AMC 1235, 1238 (S.D.N.Y.

1959). *See also* 46 U.S.C. § 1300 (COGSA applies by force of law to "[e]very bill of lading or

similar document of title which is evidence of a contract for the carriage of goods by sea to or

from ports of the United States, in foreign trade").

Thus, the Supreme Court has held that forum selection or arbitration clauses are

presumptively valid and should, generally, be given full effect. *Vimar Seguros y Reaseguros,*

*S.A. v. M/V Sky Reefer*, 515 U.S. 528, 1995 AMC 1817, 1827 (1995); *Carnival Cruise Lines, Inc.*

*v. Shute*, 499 U.S. 585, 595, 1991 AMC 1697, 1705 (1991); *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985); *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 15, 1972 AMC 1407 (1972) ("the expansion of American business and industry will

hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that

all disputes must be resolved under our laws and in our courts"); *Scherck v. Alberto-Culver Co.*,

417 U.S. 506, 519 (1974); *See also J.C.B Sales Ltd. v. Wallenius Lines*, 124 F.3d 586, 592 (2d

Cir. 1997); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36, 1997 AMC 2126, 2129 (5th

Cir. 1997).

As such, where a charter party is incorporated by reference in a bill of lading, courts

routinely apply the charter party's forum selection or arbitration clause against non-signatories

claiming under the bill of lading. *Steel Warehouse Co. v. Abalone Shipping Ltd.*, 141 F.3d 234,

238, 1998 AMC 2054, 2059 (5th Cir. 1998) ("[the charter party] states that 'all disputes from time to time arising out of this contract . . . be referred to final arbitration in London.' It is not limited merely to 'Owners and Charterers,' or any such language which requires a more limited application of the clause"); *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 1952 AMC 1931, 1933 (2d Cir. 1952) ("[w]here terms of the charter party are, . . . , expressly incorporated into the bills of lading they are part of a contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the charterer and the shipowner"); *Thyssen, Inc. v. M/V Markos N*, 1999 AMC 2515, 2518 (S.D.N.Y.) ("courts have found that . . . incorporation clauses which state only the date of the charter party are sufficient to incorporate charter parties") (*citing Lowry & Co. v. S.S. Nadir*, 223 F. Supp. 871, 874, 1965 AMC 1340, 1344 (S.D.N.Y. 1963))); *Lucky Metals Corp. v. M/V Ave*, 1996 AMC 265, 268 (S.D.N.Y. 1995) ("[t]he clause in the charter party at issue is a 'broad' clause: it requires arbitration of 'any dispute' which 'arises under' the charter party.")' *Kaystone Chem., Inc. v. Bow-Sun*, 1989 AMC 2976, 2979 (S.D.N.Y. 1989) (finding a "the bill of lading's reference to the 'Governing Charter Party dated 87.10.29' specific enough for adequate notice to plaintiff.").

More recently, in *Continental Ins. Co. v. Polish Steamship Co.*, 346 F.3d 281 (2d Cir. 2003), the Second Circuit recently found proper incorporation under nearly identical circumstances, *i.e.* incorporation of a GENCON charter party's arbitration clause into a CONGENBILL bill of lading. The court first noted that "[g]enerally, to incorporate a charter party effectively, the bill of lading must 'specifically refer[] to a charter party' and use 'unmistakable language' indicating that it is incorporated." 346 F.3d at 283 (quoting *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.*, 351 F.2d 503, 506 (2d Cir. 1965).

According to the Second Circuit, "[t]he only issue . . . is whether or not the bills of lading 'specifically identified' the charter party in question." *Id*. In analyzing the bills of lading, the court noted:

> On their face they refer to conditions of carriage on the overleaf, the first of which reads: "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated." . . . The bills of lading before us were issued in the standard "CONGENBILL" form, and are, on their terms, "to be used with charter-parties." On the face of each bill of lading, a line reads "freight payable as per CHARTER PARTY dated ............" and "06.01.2000." is typed in the blank.

*Id*. The court went on to hold that "the specification of the date of the charter party, along with references to charter parties made on the bill's face and overleaf, suffice to identify the relevant charter party with the specificity needed to give effect to the intended incorporation." *Id*. *See also Steel Warehouse*, 141 F.3d at 237 (holding that a "sophisticated party" like Steel Warehouse had constructive notice that the "common, internationally recognized" CONGENBILL form of a bill of lading incorporated a charter party where the charter party was identified only by date, although one party to the charter appears to have been nowhere identified on the bill); *State Trading Corp. of India, Ltd. v. Grundstad Shipping Corp. (Belgium) N/V*, 582 F. Supp. 1523, 1524 (S.D.N.Y. 1984) (proper incorporation found where bill of lading provides "all terms and conditions, liberties and exceptions of the charter party, dated as overleaf, are herewith incorporated").

The situation in this case is identical. The CONGENBILL bills issued for the Plaintiff's cargo contain the same incorporation clause: "[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated." (Skolnick Dec. ¶ 2, Exh. "2"). They state on their face that it they are "TO BE USED WITH CHARTER-PARTIES" and specifically reference the "CHARTER-PARTY dated 13th NOVEMBER 2001." (Skolnick Dec.

–7–

¶ 1, Exh. "1") (capitalization in original). These bills of lading clearly and unambiguously incorporate the referenced charter party including the London arbitration clause. Accordingly, Plaintiff's claims against Langesund and AIC must be stayed pending arbitration in London.

**B.    A stay pending arbitration is appropriate under the circumstances**

In the Second Circuit, courts employ a four-step procedure to determine whether and to what extent a stay pending arbitration is warranted:

> A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 75-76 (2d Cir. 1998) (*citing Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir. 1987)). As discussed above, the incorporation of the charter party's arbitration clause is sufficient evidence that Langesund, AIC, and Plaintiff agreed to arbitrate. Moreover, the "any dispute" language of the arbitration clause set forth in the charter party is sufficiently broad to cover Plaintiff's claim against Langesund and AIC.

Under the Federal Arbitration Act, courts "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). The Act reflects Congressional recognition of the strong federal policy favoring arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Where, as here, there is a "broad" agreement to arbitrate, the presumption in favor of arbitrability can only be overcome if "'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be

resolved in favor of coverage.'" *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 1998 U.S. Dist.

LEXIS 8678 (S.D.N.Y. 1998) (*quoting Worldcrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.

1997)).

If arbitration is indicated by contract, then a stay pursuant to Section 3 of the FAA is

appropriate. *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826 (D.C. Cir. 1987). See also

*Seguros Banvenez S.A. v. S.S. Oliver Drescher*, 761 F.2d 855 (2d Cir. 1985). Thus, in

accordance with the charter party, and the Federal Arbitration Act, 9 United States Code sections

2 and 3, the Motion to Stay should be granted.

## POINT II

### LOGISTEC'S CROSS-CLAIMS FOR INDEMNITY ARE NOT RIPE FOR ADJUDICATION AND SHOULD THEREFORE BE DISMISSED

Logistec's cross-claims are not justiciable at this time. Dismissal of a claim is

appropriate when a district court lacks the statutory or constitutional authority to adjudicate that

claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1).

Pursuant to Article III, Section 2 of the Constitution, it is well established that "[f]ederal courts

may adjudicate only those 'real and substantial controvers[ies] admitting of specific relief . . . as

distinguished from an opinion advising what the law would be upon a hypothetical state of

facts.'" *Auerbach v. Board of Educ. of the Harborfields Central Sch. Dist. of Greenlawn*, 136

F.3d 104, 108 (2d Cir. 1998) (*quoting Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 108

L. Ed. 2d 400, 110 S. Ct. 1249 (1990)). *See also Texas v. United States*, 523 U.S. 296, 300, 140

L. Ed. 2d 406, 118 S. Ct. 1257 (1998); *FSP, Inc. v. Societe Generale*, 2003 U.S. Dist. LEXIS 493

(S.D.N.Y. 2003) ("A claim resting on contingent future events that may occur as anticipated or

may not occur at all, is not ripe for adjudication").

It is also well established that in COGSA cases, a claim for indemnity does not arise until

there is a determination of initial liability.  *See Hercules, Inc. v. Stevens Shipping Co., Inc.*, 689 F.2d 726, 732-35 (5th Cir. 1983) (holding that "a cause of action for indemnity arises separately from and after liability has been established").  *See e.g. In re Complaint of American Export Lines, Inc.*, 568 F. Supp. 956, 963-64 (S.D.N.Y 1983) (noting that an indemnity claim based in tort and sounding in admiralty is separate and distinct from the main action and "accrues not when the tort is committed, but when the underlying claim, a judgment on that claim, or a settlement of that claim is paid or discharged").

In the event that a stay is entered, it is clear that the underlying action would be decided in arbitration and therefore would no longer reside with this Court.  It is equally true that Logistec's cross-claims for indemnity and contribution are contingent on a finding of liability against Logistec in the Plaintiff's favor.  No such finding has been made.  Logistec's cross-claims are therefore not ripe for adjudication at this time and should be dismissed accordingly.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Stay pending London arbitration and Defendants' Motion to Dismiss Cross-Claims should be granted.

Dated: Southport, Connecticut
        January 23, 2004

                    Respectfully submitted,

                    Defendants,
                    LANGESUND, D.A. and
                    ATLANTIC ICE CARRIERS, B.V.

By:  _____
    Patrick F. Lennon (CT 11950)
    Brent Z. Skolnick (CT 24076)
    TISDALE & LENNON, LLC
    10 Spruce Street
    Southport, CT 06890
    (203) 254-8474
    (203) 254-1641 (Fax)
    PLennon@tisdale-lennon.com
    BSkolnick@tisdale-lennon.com

## CERTIFICATION OF SERVICE

I, Brent Z. Skolnick, an attorney duly admitted to practice before this honorable court, affirm that on this 23rd day of January, 2004, I served a copy of the foregoing via United States Postal Service, first class postage prepaid, to:

Frederick A. Lovejoy, Esq.
Lovejoy & Associates
276 Center Road
Easton, CT  06612

S. Peter Sachner, Esq.
Tyler, Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT  06509-1910

Brent Z. Skolnick