1

CODE NAME: "CONGENBILL" EDITION 1978

Shipper

**BILL OF LADING**

.TO BE USED WITH CHARTER-PARTIES

B/L No.

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

Reference No.

SCAC CODE NO.
AHHRLS1201PJNH02

Consignee .

TO THE ORDER OF SHIPPERS

Notify address

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

| Vessel | Port of loading |
| --- | --- |
| LANGESUND | PASAJES |

Port of discharge

NEW HAVEN

Shipper's description of goods                                        Gross weight

AMERICAN WIDE FLANGE BEAMS – QUALITY: ASTM A36 / ASTM A572 GR 50 / CSA G40.21 50 W / ASTM A992.

30 BUNDLES   IN TOTAL  147.205 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P. O. 10022930 BUSHWICK
COLOR CODE: / BLUE

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND I PRE-LOADING SURVEY REPORT.

(of which ———— on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

| Freight payable as per | 13TH NOVEMBER 2001. |
| --- | --- |
| CHARTER-PARTY dated | |

FREIGHT ADVANCE.

Received on account of freight:

Time used for loading_____days_____hours.

**S H I P P E D** at the Port of Loading in apparent good order and
condition on board the Vessel for carriage to the
Port of Discharge or so near thereto as she may safely get the goods
specified above.

Weight, measure, quality, quantity, condition, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said Vessel has signed the
number of Bills of Lading indicated below all of this tenor and date, any one
of which being accomplished the others shall be void.

. FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
| --- | --- |
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A. AS AGENTS FOR AND ON BEHALF OF THE MASTER: CAPT. EUGENIUSZ |

CODE NAME: "CONGENBILL" E    IN 1978

| Shipper | | B/L No. |

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

**BILL OF LADING**

TO BE USED WITH CHARTER-PARTIES

Reference No.

SCAC CODE NO.
AHHRLS1201PJNH01

Consignee

TO THE ORDER OF SHIPPERS

Notify address

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

| Vessel | Port of loading |
| LANGESUND | PASAJES |

Port of discharge

NEW HAVEN

| Shipper's description of goods | Gross weight |

AMERICAN WIDE FLANGE BEAMS – QUALITY: ASTM A36 / ASTM A572 GR 50 / CSA G40.21  50 W / ASTM A992.

27 BUNDLES   IN TOTAL  132.468 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P. O. 10022895 INFRA METALS
COLOR CODE: / RED

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND 1 PRE-LOADING SURVEY REPORT.

(of which _____ on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

| Freight payable as per | 13TH NOVEMBER 2001. | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
| CHARTER-PARTY dated | | |
| FREIGHT ADVANCE. | | Weight, measure, quality, quantity, condition, contents and value unknown. |
| Received on account of freight: | | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| | | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
| Time used for loading _____ days _____ hours. | | |

| Freight payable at | Place and date of issue |
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A. AS AGENTS FOR AND ON BEHALF OF THE MASTER: CAPT. EUGENIUSZ |

Printed and sold

CODE NAME: "CONGENBILL"  EDITION 1978

Shipper

BILL OF LADING
TO BE USED WITH CHARTER-PARTIES

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

B/L No.

Reference No.

SCAC CODE NO.
AHHRLS1201PINH03

Consignee

TO THE ORDER OF SHIPPERS

Notify address

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

| Vessel | Port of loading |
|---|---|
| LANGESUND | PASAJES |

Port of discharge

NEW HAVEN

Shipper's description of goods

Gross weight

AMERICAN CHANNELS-MC / QUALITY: ASTM A36 / ASTM A572 GR 50 / CSA G40.21 50 W / ASTM A992.

6 BUNDLES  IN TOTAL 21.774 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P. O. 10022874 AZCO
COLOR CODE: / GREEN

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND I PRE-LOADING SURVEY REPORT.

(of which _____ on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

| | |
|---|---|
| Freight payable as per | 13TH NOVEMBER 2001. |
| CHARTER-PARTY dated | |
| FREIGHT ADVANCE. | |
| Received on account of freight: | |
| Time used for loading_____days,_____hours. | |

**SHIPPED** at the Port of Loading in apparent good order and
condition on board the Vessel for carriage to the
Port of Discharge or so near thereto as she may safely get the goods
specified above.

Weight, measure, quality, quantity, condition, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said Vessel has signed the
number of Bills of Lading indicated below all of this tenor and date, any one
of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A. AS AGENTS FOR AND ON BEHALF |

Page 2

CODE NAME: "CONGENBILL" EDITION 1978

**Shipper**

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

B/L No.

# BILL OF LADING
### TO BE USED WITH CHARTER-PARTIES

Reference No.

SCAC CODE NO.
AHHRLS120JPJNH04

**Consignee**

TO THE ORDER OF SHIPPERS

**Notify address**

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

COPY

| Vessel | Port of loading |
|---|---|
| LANGESUND | PASAJES |

**Port of discharge**

NEW HAVEN

Gross weight

**Shipper's description of goods**

AMERICAN I-BEAMS - QUALITY ASTM A36 / ASTM A572 GR 50 / CSA G40.21 50 W / ASTM A992.

81 BUNDLES   IN TOTAL 390,028 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P. O. 10022850 AZCO
COLOR CODE: / GREEN

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND I PRE-LOADING SURVEY REPORT.

(of which ———— on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

| freight payable as per | 13TH NOVEMBER 2001. |
|---|---|
| CHARTER-PARTY dated |  |
| FREIGHT ADVANCE. |  |
| Received on account of freight: |  |
| Time used for loading_____days_____hours. |  |

**SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.

Weight, measure, quality, quantity, condition, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | Place and date of issue |
|---|---|
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A. AS AGENTS FOR AND ON BEHALF OF THE MASTER: CAPT. EUGENIUSZ |

CODE NAME: "CONGENBILL" Ef   N 1978

**Shipper**

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

## BILL OF LADING
### TO BE USED WITH CHARTER-PARTIES

B/L No.

Reference No.

SCAC CODE NO.
AHHRLS1201PJNH05

**Consignee**

TO THE ORDER OF SHIPPERS

**Notify address**

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

| Vessel | Port of loading |
|---|---|
| LANGESUND | PASAJES |

**Port of discharge**

NEW HAVEN

**Shipper's description of goods**

Gross weight

AMERICAN WIDE FLANGE BEAMS – QUALITY ASTM A36 / ASTM A572 GR.50 / CSA G40.21 50 W / ASTM A992.

197 BUNDLES   IN TOTAL   960.849 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P.O. 10022892  INFRA METALS
COLOR CODE: / RED

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND I PRE-LOADING SURVEY REPORT.

(of which                         on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

| Freight payable as per | 13TH NOVEMBER 2001. | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
|---|---|---|
| CHARTER-PARTY dated | | |
| FREIGHT ADVANCE. | | weight, measure, quality, quantity, condition, contents and value unknown. |
| Received on account of freight: | | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| | | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
| Time used for loading_____days_____hours. | | |

| Freight payable at | Place and date of issue |
|---|---|
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A. AS AGENTS FOR AND ON BEHALF OF THE MASTER. CAPT. EUGENIUS? |

Printed an sold

CODE NAME: "CONGENBILL" DITION 1978

Shipper

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

B/L No.

Reference No.

SCAC CODE NO.
AHHRLS1201PJNH06

Consignee

TO THE ORDER OF SHIPPERS

Notify address

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

| Vessel | Port of loading |
|---|---|
| LANGESUND | PASAJES |

Port of discharge

NEW HAVEN

Shipper's description of goods

Gross weight

AMERICAN WIDE FLANGE BEAMS – QUALITY ASTM A36 / ASTM A572 GR 50 / CSA G40.21 50 W / ASTM A992.

555 BUNDLES IN TOTAL 2,619,901 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P. O. 10022926 BUSHWICK
COLOR CODE: / BLUE

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND I PRE-LOADING SURVEY REPORT.

(of which _____ on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

| Freight payable as per | 13TH NOVEMBER 2001. | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
|---|---|---|
| CHARTER-PARTY dated | | Weight, measure, quality, quantity, condition, contents and value unknown. |
| FREIGHT ADVANCE. | | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| Received on account of freight | | FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |
| Time used for loading _____ days _____ hours. | | |

| Freight payable at | Place and date of issue |
|---|---|
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A. AS AGENTS FOR AND ON BEHALF OF THE MASTER, CAPT. EUGENIUSZ |

CODE NAME: "CONGENBILL"   EDITION 1976

Shipper

TRADE ARBED INC.
825 THIRD AVENUE
NEW YORK, N.Y. 10022

Page :

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

B/L No.

Reference No.

SCAC CODE NO.
AHHRLS1201PJNH07

Consignee

TO THE ORDER OF SHIPPERS

Notify address

J.F. MORAN & CO.
70, RATON DRIVE UNIT D
MILFORD, CT 06460

| Vessel | Port of loading |
|---|---|
| LANGESUND | PASAJES |

| Port of discharge | | Gross weight |
|---|---|---|
| NEW HAVEN | | |

Shipper's description of goods

AMERICAN I-BEAMS – QUALITY ASTM  A36 / ASTM  A572  GR 50 / CSA  G40.21  50 W / ASTM A992.

12 BUNDLES   IN TOTAL  58,947 KGS.

(CARGO DETAILS AS PER ATTACHED SHIPPERS' PACKING LIST)

MARKING: P. O. 10022961 ORKIN STEEL
COLOR CODE: / WHITE

CONDITION OF CARGO AS PER ATTACHED MATE'S RECEIPT AND P AND I PRE-LOADING SURVEY REPORT.

(of which _____ on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY dated   13TH NOVEMBER 2001.<br><br>FREIGHT ADVANCE.<br>Received on account of freight:<br><br>Time used for loading _____ days _____ hours. | **SHIPPED** at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.<br><br>Weight, measure, quality, quantity, condition, contents and value unknown.<br><br>IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITIONS OF CARRIAGE SEE OVERLEAF |

| Freight payable at | Place and date of issue |
|---|---|
| AS PER C/P | PASAJES, 27TH NOVEMBER 2001. |
| Number of original Bs/L | Signature |
| THREE / 3 | SOBRINOS DE M. CAMARA, S.A.<br>AS AGENTS FOR AND ON BEHALF<br>OF THE MASTER CAPT EUGENIUSZ |

Printed on sold

2

# BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1978
ADOPTED BY
THE BALTIC AND INTERNATIONAL
MARITIME CONFERENCE (BIMCO)

Page 1

## Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated. The Carrier shall in no case be responsible for loss of or damage to cargo arisen prior to loading and after discharging.

(2) **General Paramount Clause.**
The Hague Rules contained in the international Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.
*Trades where Hague-Visby Rules apply.*
In trades where the international Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

3) **General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1974, in London unless another place is agreed in the Charter Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Netherlands Commercial Code, Art. 700, and the Belgian Commercial Code, Part II, Art. 148.

4) **New Jason Clause.**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carriers is not responsible, by statute, contract or otherwise, the goods, Shippers, Consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.
If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or owners of the goods to the Carrier before delivery.

5) **Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying ship or her Owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight, destination, etc., see overleaf.

TOTAL P.23

3

[ RECEIVED 12:55 20/11 1901 AT 4737024810        PAGE    2 (PRINTED PAGE    2) ]
20/11/01 11:44:34        +31 105065694->        4737024810        Page 002
                                                                   2/7 ⌐ .1

| | THE BALTIC AND INTERNATIONAL MARITIME COUNCIL |
|---|---|
| *Universal Maritima, S.L.*<br>*Bilbao (Spain)* | UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"                                          Part I |
| | 2. Place and date<br>*Bilbao, 13th November 2.001* |
| 3. Owners/Place of business (Cl. 1)<br>*Atlantic Ice Carriers B.V.*<br>*Rotterdam (The Netherlands)* | 4. Charterers/Place of business (Cl. 1)<br>*Aceralia Perfiles Olaberria, S.L*<br>*Olaberria (Spain)*<br>*Aceralia Perfiles Madrid, S.L.*<br>*Madrid (Spain)* |
| 5. Vessel's name (Cl. 1)<br>*Langesund (USEC)* | 6. GT/NT (Cl. 1)<br>*Langesund:5.060/3.045* |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br><br>*Langesund: 7.906 / Otona: 7.800* | 8. Present position (Cl. 1)<br><br><br>*Trading* |
| 9. Expected ready to load (abt.) (Cl. 1)<br>*22nd November 2.001* | |
| 10. Loading port or place (Cl. 1)<br><br>*Pasajes 1 grgb anaa for USEC cargoes (Langesund)*<br><br>*Also see Clause 41* | 11. Discharging port or place (Cl. 1)<br>*Owners' berth*<br>*See Clause 41* |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br><br>*A sole cargo of about      ntons steel beams in bundles of max. 6 ntons upto 60' length.*<br>*See also Clause 41* | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br><br>*Free in cqd l/s/d – Liner out* | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>*See Clause 18* |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) | (a) Laytime for loading |
| 18. Agents (loading) (Cl. 6)<br>*Sobrinos de M. Cámara* | (b) Laytime for discharging |
| 19. Agents (discharging) (Cl. 6)<br>*Owners' agents.* | (c) Total laytime for loading and discharging |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7) | 21. Cancelling date (Cl. 9)<br>*26th November 2.001* |
| | 22. General Average to be adjusted at (Cl. 12) |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15) |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)<br>*See Clause 22* | *3.75 pct payable to Universal Maritima, S.L.* |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19) | 26. Additional clauses covering special provisions, if agreed<br>*Clauses 18-41, both included, to be deemed part of this Charter Party* |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Printed and sold by Fr. G. Knudtzon Ltd., 55 Toldbodgade, DK-1253 Copenhagen K. Telefax +45 33 93 11 84
by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen

[ RECEIVED 12:56 20/11 1901 AT 4737024010        PAGE   3 (PRINTED PAGE   3) ]
20/11/01 11:45:05        +31 105866594->        4737024010

Page 003

P. 3/7

Gencon Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. Owners' Responsibility Clause
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.

And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. Deviation Clause
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight   See Clause 18
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.
(b) Prepaid. If according to Box 13 freight is to be prepaid, then it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.
(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weighing/quantity can be ascertained by official weighing machine, joint draft survey or tally.

Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.

5. Loading/Discharging
(a) Costs/Risks
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.

(b) Cargo Handling Gear
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power – pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party – shall not count as laytime or time on demurrage.

On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.

(c) Stevedore Damage
The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.

The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. Laytime   See clause 19 & 20
(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours.

'0300

readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 18.

If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not, Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.

If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.

Time used before commencement of laytime shall count.
* Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage
Demurrage at the loading and discharging ports is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.
In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the Vessel is in or at the loading port, the Owners are entitled to terminate the Charter Party and claim damages for any losses caused thereby.

8. Lien Clause
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. Cancelling Clause
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. Bills of Lading
Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. Both-to-Blame Collision Clause
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. General Average and New Jason Clause
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.".

13. Taxes and Dues Clause
(a) On Vessel - The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.
(b) On cargo - The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.
(c) On freight - Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

LANG - 00028

[ RECEIVED 12:57 20/11 1901 AT 4737024010
20/11/01 11:46:19        +31 105065694->.        4737024010
PAGE    4 (PRINTED PAGE    4) ]
Page 004
P. 4/7

Gencon Charter (As revised 1922, 1976 and 1994)

**14. Agency**

In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.

**15. Brokerage**

A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.

In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

**16. General Strike Clause**

(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or, at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17. War Risks ("Voywar 1993")**

(1) For the purposes of this Clause, the words:

(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks. On giving notice to the Charterers the Owners may cancel this Contract of Carriage, or may refuse to perform such part of it as may, in the reasonable judgement of the Master and/or the Owners, expose, or be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another safe route which will not expose the Vessel to such War Risks, then the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall, if the total extra distance exceeds 100 miles, be entitled to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(8) The Vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body acting or purporting to act on behalf of such Government, or any committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such orders, directions, recommendations or advice;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which may be in force and to obey the orders and directions of those who are charged with their enforcement; and the Charterers shall indemnify the Owners against all consequences or liabilities arising from such action;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(9) If in compliance with any of the provisions of sub-clauses (2) to (8) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18. General Ice Clause**

Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.

(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of loading if no cargo than so loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

Port of discharge

(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19. Law and Arbitration**

(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

(b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.

(c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.

(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.

(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.

** Where no figure is supplied in Box 25 in Part I (the amount only shall be valid for the other provisions of this Clause shall have full force and remain in effect)

LANG - 00029

RECEIVED 12:58 20/11 1901 AT 4737024010     PAGE   5 (PRINTED PAGE   5) ]
20/11/01 11:47:36         +31 105065694->     4737024010
Page 005
P. 5/7



**Universal Marítima, s.l.**
Agencia Marítima Shipping Agency

ADDITIONAL CLAUSES TO CHARTER PARTY DATED 13TH NOVEMBER, 2001 IN BILBAO, MV "LANGESUND"

**Clause 18**
Freight shall be paid as follows:
100% less commission, payable within 3 banking days after signing/releasing Bills of Lading. Bills of Lading to be marked "Freight payable as per Charter Party". Remarks to be detailed/accurated, reasonable. Bills of Lading to be claused as per Mate's Receipt.
Freight discountless and non returnable ship/vessel and/or cargo lost or not lost. Freight deemed earned as cargo taken on board.
The rate is given basis liner out to under vessel's hook - any further handling / expenses to be for receivers' account.

**Clause 19**
Loading: Custom of the Port basis.

**Clause 20**
Discharging: Liner out at Owners' nominated berth.

**Clause 21**
Holds to be free of stanchions, stiffeners, recess and any other obstructions which may hinder the operation of forklifts commonly used for stowage of such cargo.

Vessel's Owners/Master to co-operate with Charterers/Shippers and stevedores to arrange for the cargo to be stowed according to the methods commonly used at the loading port.

**Clause 22**
Vessel is deemed to be an arrived vessel only as and when the master is able to give Notice of Readiness to load with holds clean, dry and in every way suitable to receive, load and stow the cargo.
N.O.R. to be tendered by cable and/or telex in writing during office hours Monday through Friday 17:00 hrs. wipon, wiccon, wifpon, wibon.

**Clause 23**
If local regulations permit, opening and closing of hatches and rigging of cargo gear shall be done in Owners' time for Owners' account, otherwise for Charterers' account. Master to arrange closing the hatches if weather is wet or threatening.

**Clause 24**
The vessel to be responsible for the number of bundles / packages or pieces, whatever case may be loaded. Bills of Lading to be signed accordingly.
Charterers to provide for tallying and to be responsible for number of bundles / packages / pieces.

**Clause 25**
Any dues/taxes on cargo and/or freight both ends to be for Charterers' /Shippers/Receivers account. Same on vessel/crew/both ends to be for Owners' account. Usual port disbursements including dock dues to be for Owners' account.

**Clause 26**
Stevedores, although appointed and paid by shippers/Charterers shall load and stow the cargo in accordance with master's instructions and to his full satisfaction.

**Clause 27**
Shippers/Charterers to have the option to use forklifts during loading operations and Owners to allow the use of forklifts during in all compartments and warrant that the vessel is in every respect suitable to allow forklifts operations.

LANG - 00030

[ RECEIVED 12:59 20/11 1991 AT 4737024810    PAGE  6 (PRINTED PAGE   6) ]
28/11/81 11:48:85        +31 105865694->    4737024810                              Page 886
                                                                                    P. 6/7

 **Universal Marítima, s.l.**

Agencia Marítima Shipping Agency

---

ADDITIONAL CLAUSES TO CHARTER PARTY DATED 13TH NOVEMBER, 2001 IN BILBAO.
MV "LANGESUND"

---

**Clause 28**
Charter Party terms shall be always supersede Bills of Lading terms, whenever contradictory.

**Clause 29**
Owners or master shall advise the Charterers and the agents of vessel' ETA at loading/discharging port, by cable/telex, 5 days 72/48/24 hours before her arrival.

**Clause 30**
The vessel shall always give free use of winches and derricks or cranes upto their lifting capacity as described and to supply running gear, gins, blocks, falls and runners and also to supply free of charge sufficient steam and/or power to drive all winches / cranes simultaneously day and nigth, when and where required, free of charge.
Shoregangs to drive winches / cranes at Charterers' / shippers' expense.

**Clause 31**
Dunnage supplied, if any, for securing the cargo shall become ship's property, unless claimed by agents, stevedores, forwarders and receivers at the port of discharge. Discharge of dunnage, if required, to be free of expense for the vessel.

**Clause 32**
Any dispute arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament in London of two arbitrators, who shall be commercial men carrying on business in London. One to be appointed by each of the parties with power to such arbitrors to appoint and umpire whose decision shall be final and binding upon both parties. English law shall govern interpretation/execution of this contract.

**Clause 33**
Typewritten Clauses or amendmends shall principally overrule the printed text of the Gencon Charter Party.

**Clause 34**
Owners' agents at both ends.

**Clause 35**
Performing vessel to be mv "Langesund" for cargo ex Pasajes to Wilmington N.C. And New Haven, details as follows:
Type: single decker, general cargo, boxshapped
Built 1.979 - flag: NIS - class: Bureau Veritas
Tonnage: Gross 5.060 - net: 3.045
Dwat: 7.906 mts on 7,31 m - Dwcc: 7.600 cc)
Loa/lbp/draft: 106,50m/ 101,50m/16,50m
2 holds:      Ho. 1: length 26,30 - beam fore 7,50 widening to 13,20 at 13,30 hold length
              Ho. 2: length 49,00 x 13,20 beam
              Heigh of holds: 11m from tanktop to under hatch.
2 hatches:    Ha. 1: 24,40 x 13,20
              Ha. 2: 46,80 x 13,20

Owners guarantee vessel to be suitable to load 60 feet steel beams.Hatches have to be minimum 2 mts longer than the longest piece of cargo.

LANG - 00031

( RECEIVED 12:59 20/11 1901 AT 4737024810    PAGE  7 (PRINTED PAGE  7) )
  20/11/01 11:48:32         +31 105065694->    4737024810
Page 007
P. 7/7

 **Universal Marítima, s.l.**

Agencia Marítima Shipping Agency

ADDITIONAL CLAUSES TO CHARTER PARTY DATED 13TH NOVEMBER, 2001 IN BILBAO,
MV "LANGESUND"

**Clause 36**
If specifically requested by Charterers to sign carriers' Liner form Bills of Lading, as presented without prejudice to the terms, conditions and exceptions of this Charter Party, it being distinctly understood that all costs relating directly or indirectly to the loading, stowing, lashing, securing, dunnaging of the cargo will remain solely for Charterers' account.
Lashing/securing to be supervised by Owners' port captain and he is to determine how much dunnage/ lashing required, as per usual practice for this type of cargo at these loadports.

Only bark-free dunnage to be used.

**Clause 37**
Terms and conditions of this Charter Party to be kept strictly private and confidential.

**Clause 38**
Cargo can be loaded under rain, so in case Owners stop loading during/in rain periods time not to count, and standby charges to be for Owners' account.

**Clause 39**
In discharge port the filed terminal handling fee to be for receivers' account.

**Clause 40**
Wharfage on cargo to be for receivers' account and to be billed as per local tariffs.

**Clause 41**
Total estimated tonnage about 12.235 tons as follows:

To be loaded on mv. "Langesund" ex Pasajes:
Wilmington N.C.:      2,195 tons.
New Haven:           4,312 tons.

**Clause 42**
Loading operations at both ports to be performed under Master's control and supervision.

LANG - 00032

[ RECEIVED 12:59 20/11 1901 AT 4737024810     PAGE     8 (PRINTED PAGE     8) ]
20/11/01 11:48:51          +31 105065694->     4737024810          Page 888

LANG - 00033

4

[ RECEIVED 16:02 28/01 1903 AT 37°°4010    PAGE  6 (PRINTED PAGE  6) ]
28/01/03    15:44    MYKLF    THAUG REDERI A/S → 37024010        NG.100    G0E
20.JAN.2003 16:44    SE.  / +47 55330106                        .R.209    S.6/12
28 Jan 09 14:36                                                         p. 6

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| FORTIS CORPORATE INSURANCE<br>(as subrogee of TRADE ARBED, INC.,)<br>Plaintiff, | : <br> : <br> : | 3:02CV1991 (CFD) |
| | : | |
| -against- | : <br> : | AMENDED<br>VERIFIED COMPLAINT |
| | : | |
| M/V LANGESUND, her engines, boilers, | : | |
| tackle, appurtenances, etc., in rem. | : | |
| LANGESUND, D.A., ATLANTIC ICE | : | |
| CARRIERS, B.V., LOGISTEC CONNECTICUT, | : | |
| INC., and LOGISTEC U.S.A., INC. | : | November 18, 2002 |
| in personam, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Fortis Corporate Insurance (as subrogee of Trade Arbed, Inc.), by its attorneys,

Lovejoy & Associates, for its Verified Complaint, alleges on information and belief as follows:

1.    All and singular the following premises are true and constitute an admiralty or

maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and

within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

2.    At all times material hereto, Plaintiff Fortis Corporate Insurance (as subrogee of

Trade Arbed, Inc.), (hereinafter "Plaintiff") was and is a corporation organized and existing

under and by virtue of the laws of a foreign country and was the insurer of the shipments which

are the subject matter of this action.

3.    Defendant M/V LANGESUND (hereinafter the "Vessel") and Defendants

Langesund, D.A. and Atlantic Ice Carriers, B.V. are corporations or other entities organized and

existing under and by virtue of the laws of a foreign country. Defendants Logistec Connecticut,

Inc. and Logistec U.S.A., Inc. are domestic corporations organized under the laws of the State of

Connecticut. At all times material hereto, Defendants M/V LANGESUND, Langesund, D.A.,

[ RECEIVED 16:03 28/01 1903 AT 3⎺⎺⎺4810          PAGE   7 (PRINTED PAGE   7) ]
28/01/03     15:44    MYK1    STHAUG REDERI A/S → 37024810                      NG.100   D07
29.JAN.2003  16:45    S⎺⎺⎺0 +47 55330106                              NR.209    S.7/12
28 Jan 03 14:36                                                                p.7

Atlantic Ice Carriers, B.V., Logistec Connecticut, Inc., and Logistec, U.S.A., Inc. (hereinafter

collectively "Defendants") each were and now are engaged in business as a common carrier of

merchandise by water for hire and/or was a warehouse or bailee with respect to the shipment

which is the subject matter of this action. Defendants each either owned, chartered, managed,

constituted or otherwise controlled the Vessel as a general vessel engaged in the common

carriage of merchandise by water for hire between, among others, ports in the United States and

foreign countries or was a bailee with respect to the shipment which is the subject matter of this

action. The said Vessel is or will be within the jurisdiction of this Honorable Court and within

this District during the pendency of this action.

4.    On or about November 27, 2001 at the port of Pasajes, Spain, there was shipped

and delivered to the Defendants and the said Vessel, a shipment steel wide flange I-Beams (the

"Shipment"), then being in good order and condition, and the Defendants including the said

Vessel then and there accepted the Shipment so shipped and delivered to them. In consideration

of certain agreed freight charges thereupon paid or agreed to be paid, they further agreed to

transport and carry said Shipment to the Port of New Haven, Connecticut, and there deliver same

in like good order and condition to Plaintiff's assured or its designee. The carriage was in

accordance with the terms and conditions of certain bills, including but not limited to: B/L Nos:

AHHRLS1201PJN401-07; AHHRLS1201PJWN01-16; and AHHRLS1201PJNH01/02/03/04/

05/06/07, dated November 27, 2001, and/or other documents also constituting portions of the

contract of carriage for the steel coils.

5.    Thereafter the said Vessel arrived at the Port of New Haven, Connecticut, where it

and the other Defendants made delivery of the said Shipment but not in like good order and

condition as when shipped, delivered to, and received by them, but on the contrary, short and

2

[ RECEIVED 16:04 28/01 1903 AT 3??^4810        PAGE   8 (PRINTED PAGE   8) ]
28/01/03    15:44    MYKL    STRAUG REDERI A/S → 37024810                        NG.100    DOE
28.JAN.2008   18:45         .0 +47 55338106                         NR.209    S.8/12
28 Jan 03 14:36                                                              P.E

seriously injured and impaired in value, all in violation of Defendants' and the Vessel's obligations and duties as common carriers of merchandise by water for hire and/or bailees of said Shipment.

6.     Plaintiff insured the Shipment and paid certain damages incurred by its assured, due to the Shipment having been damaged by Defendants. Plaintiff brings this action on its own behalf and as agent and trustee on behalf of and for the interest of all parties interested in and who were damaged as a result of the damage suffered by the said Shipment, as their respective interests may ultimately appear, and Plaintiff is duly entitled to maintain this action.

7.     Plaintiff and its assured have performed all conditions on their parts to be performed.

8.     By reason of the foregoing, Plaintiff has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in a sum estimated to be US $53,138.72.


### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. § 1300 ET. SEQ.

(Against All Defendants)

9.     Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 8 above.

10.     By reason of the foregoing, each of the Defendants were common carriers of merchandise by water for hire within the meaning of the Carriage of Goods By Sea Act, 46

3

[ RECEIVED 16:04 28/01 1903 AT 37024810          PAGE   9 (PRINTED PAGE   9) ]
28/01/03    15:44    MYKLT    THAUG REDERI A/S → 37024810                    NG.100    005
 co.jan.2003  15:46      .0  +47 55330106                              NR.209    S.9/12
28 Jan 03 14:37                                                                  p.9

U.S.C. § 1300, et. seq., and breached their duties as carriers under that Act and under the contract of carriage entered into by each of them pursuant to that Act.

11.    Plaintiff insured the Shipment above mentioned and paid certain damages incurred by its assured, which was the owner of the Shipment, due to is having been damaged by Defendants. Plaintiff brings this action on its own behalf, on behalf of its assured and as agent and trustee on behalf of and for the interest of all parties interested in and who were damaged as a result of the loss of the said Shipment, as their respective interests may ultimately appear, and Plaintiff is duly entitled to maintain this action.

12.    Plaintiff and its assured have performed all conditions on their part to be performed.

13.    . By reason of the foregoing, each of the Defendants have caused damage to Plaintiff, its assured and to the others on whose behalf Plaintiff sues, in an amount as nearly as can now be estimated, up to or exceeding US $53,138.72.


## SECOND CAUSE OF ACTION

### COMMON LAW NEGLIGENCE AND
### BREACH OF BAILMENT OBLIGATIONS

(Against All Defendants)

14.    Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 13 above.

15.    Each of the Defendants were acting as bailees of the Shipment at the times it was damaged. Each of those Defendants were thereby, or through their contractors, agents, servants or sub-bailees, bailees who warranted and had a legal duty to safely keep, care for and deliver the

[ RECEIVED 16:04 28/01 1903 AT 37024810    PAGE 10 (PRINTED PAGE 10) ]
28/01/03    15:44    MYKL    STHAUG REDERI A/S → 37024810    NG.100    010
CC.JAN.2003  16:46    .U +47 55330106    NR.209    S.10/12
28 Jan 03 14:37    P.1

said Shipment in the same condition as when entrusted to them and to perform their services as bailees or to ensure that those services were performed with reasonable care and in a non-negligent and workmanlike manner. Each of them breached those bailment obligations and negligently failed to deliver to Plaintiff's assured, or its designee, the Shipment in as good condition as when entrusted to them.

16.    Plaintiff insured the Shipment above mentioned and paid certain damages incurred by its assured due to its having been damaged by Defendants. Plaintiff brings this action on its own behalf, on behalf of its assured and as agent and trustee on behalf of and for the interest of all parties interested in and who were damaged as a result of the loss of the said Shipment, as their respective interests may ultimately appear, and Plaintiff is duly entitled to maintain this action.

17.    Plaintiff and its assured have performed all conditions on their part to be performed.

18.    By reason of the foregoing, each of the Defendants have caused damage to Plaintiff, its assured, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding US $53,138.72.

WHEREOF, Plaintiff prays:

1.    That process in due form of law may issue against each of the Defendants citing them to appear and answer all and singular the matters aforesaid;

2.    That if said Defendants cannot be found within this District, then all their property within the District be attached in the sum of estimated to exceed US $53,138.72, with interest thereon and costs, the sum sued for in this Complaint.

5

[ RECEIVED 16:05 28/01 1903 AT 37°°°810     PAGE 11 (PRINTED PAGE 11) ]
28/01/03    15:44   MYKLJ    THAUG REDERI A/S → 37024810                  NG.100   011
28.JAN.2003  16:47    SL  )0 +47 55330106                      NR.209   S.11/12
28 Jan 03 14:37                                                             p.1

3.     That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action;

4.     That process in due form of law according to the practice of this Court in causes of admiralty and maritime claims may issue against the said Vessel M/V LANGESUND, its engines, etc., and that all persons having or claiming any interest therein be cited to appear and answer under oath, all and singular the matters aforesaid, and that this Court will be pleased to pronounce judgment in favor of plaintiff for its damages as aforesaid, with interest, costs and disbursements, and that the said Vessel may be condemned and sold to pay therefor; and

5.     That this Court will grant to Plaintiff such other and further relief as may be just and proper in the premises.

Dated: Southport, Connecticut
       November 18, 2002

LOVEJOY & ASSOCIATES
Attorneys for Plaintiff
Fortis Corporate Insurance
(as subrogee of Trade Arbed, Inc.)

By: _____
    Frederick A. Lovejoy (CT 03121)
    3695 Post Road
    Southport, Connecticut 06890
    (203) 256-8666
    (203) 256-3252 (telefax)

FortisComplaint.doc

[ RECEIVED 16:05 28/01 1903 AT 37°°°910    PAGE. 12 (PRINTED PAGE 12) ]
28/01/03    15:44    MYKLE   HAUG REDERI A/S → 37024810                    NG.100   012
28.JAN.2003  16:47    St. .J +47 55330186                           NR.209   S.12/12
   28 Jan 03 14:37                                                          P.1

<u>VERIFICATION</u>

STATE OF CONNECTICUT)
                     )    **ss:**
COUNTY OF FAIRFIELD  )

Frederick A. Lovejoy, being duly sworn, states that he is the attorney for Plaintiff, Fortis

Corporate Insurance (as subrogee of Trade Arbed, Inc.), in this action and that the foregoing

complaint is true to his own knowledge, except as to matters therein stated on information and

belief and as to those matters he believes it to be true; that the grounds of his belief as to all

matters not stated upon his knowledge are correspondence and other writings furnished to him by

Plaintiff or obtained through his own investigation; and that the reason why the verification is not

made by Plaintiff is that Plaintiff is a corporation, none of the officers of which is now within the

District.

_____
Frederick A. Lovejoy

Sworn to before me this
19th 2nd day of November, 2002

_____
Notary Public
Cathrine Mandel
Comm. Exp: 2/28/03

7