UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



-----------------------------------------------------------x

FORTIS CORPORATE INSURANCE
(as subrogee of TRADE ARBED, INC.),                    3:02CV1991 (CFD)

                             Plaintiff,

             -against-                           **PLAINTIFF'S OPPOSITION
                                                 MEMORANDUM IN
                                                 RESPONSE TO DEFENDANT**
M/V LANGESUND, her engines, boilers,             **LANGESUND D.A.'S and**
Tackle, appurtenances, etc. in rem, LANGESUND,   **DEFENDANT ATLANTIC ICE**
D.A., ATLANTIC ICE CARRIERS, B.V.,               **CARRIERS B.V.'S MOTION TO**
LOGISTEC CONNECTICUT, INC., and                  **STAY PENDING ARBITRATION**
LOGISTEC USA, INC. in personam,

                             Defendants.          March 12, 2004
-----------------------------------------------------------x


## INTRODUCTION

        Defendants Langesund D.A. ("Langesund") and Atlantic Ice Carriers B.V.

("AIC") have moved to stay this action pending arbitration in London.  However, the

arbitration provision under which these defendants have moved was never properly

incorporated into the bills of lading.  Accordingly, there is no agreement to arbitrate, and there

is no basis for any stay of the action and thus defendants' motion should be denied.

## STATEMENT OF FACTS

        This admiralty action involves damage and loss to a cargo of steel beams carried

on board the M/V LANGESUND from Pasajes, Spain to New Haven in late 2001.  The steel

shipment was carried under and pursuant to a series of bills of lading (all on the pre-printed

standard "CONGENBILL" form) which all provided, in pertinent part: "...all terms and

conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith

incorporated." (See Exhibit 2 to Declaration of Brent Z. Skolnick). These bills of lading also provided for the application of Spanish maritime law by virtue of the following General Paramount Clause: "The Hague Rules---as enacted in the country of shipment shall apply to this contract...", ... *"Trades where Hague-Visby Rules apply.* In trades where...the Hague-Visby Rules apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading..." (Id.)

The said bills of lading also purport to incorporate a charter party by reference. That reference, on the face of the bills of lading, is to a "...CHARTER-PARTY dated 13th NOVEMBER 2001". (Skolnick Declaration Exh. 1).

The referenced November 13, 2001 charterparty ("charterparty"), on the standard GENCON form, is between AIC as the vessel owners and Aceralia Perfiles Olaberria, S.L. and Aceralia Perfiles Madrid, S.L. as charterers. (Skolnick Declaration Exh. 3).

Clause 32 of the charterparty provides in full:

> Any dispute arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament in London of two arbitrators, who shall be commercial men carrying on business in London. One to be appointed by each of the parties with power to such arbitrators to appoint and umpire whose decision shall be final and binding upon both parties. English law shall govern interpretation/execution of this contract. (Emphasis added)

Clause 25 of the charterparty provides, inter alia

> "This Charter Party shall be governed by and construed in accordance with English law..."

Accordingly, it is indisputable that English law governs the interpretation and construction of the contract upon which the moving defendants rely.

2

Under English law, there is no proper incorporation of this charterparty arbitration provision. As such, the moving defendants Langesund and AIC are not entitled to any stay of these proceedings. Their joint motion must therefore be denied.

Alternatively, and given the applicability of Spanish law, as was agreed to by the parties in their bill of lading contracts, the law of Spain must govern. Under Spanish law, there is no incorporation of the charterparty arbitration provision. As such, the moving defendants Langesund and AIC are not entitled to any stay of these proceedings. Their joint motion must therefore be denied.

## ARGUMENT

Despite the express and unequivocal language set forth in the very charterparty upon which they rely, i.e. "This Charter Party shall be governed by and construed in accordance with English law..." (Clause 25) and "English law shall govern interpretation/execution of this contract", (Clause 32) the moving defendants ignore these plain legal and contractual mandates.

Under the governing applicable English law, these defendants have no right to a stay of these proceedings. According to the accompanying Declaration of Roy Ginsberg, Esq., an English solicitor engaged in the practice of maritime law in London, the purported incorporation of the charterparty arbitration clause is ineffective. Thus, these defendants have no right to arbitrate against the plaintiff as shipper and holder of the bills of lading.

The subject bill of lading contracts were all issued in Spain in respect of Spanish goods. The bills were executed by the Spanish agent of the vessel's master. The vessel loaded the subject cargo at a Spanish port. The condition of the cargo under these bills of lading (the ultimate issue at bar) was described in documents created and issued in Spain by Spanish

3

personnel.  The bill of lading contract itself was executed in Spain.  The vessel sailed from a

Spanish port.  For all of these choice-of-law reasons, and in addition to the express application

of the Spanish Hague and Hague-Visby Rules, Spanish law governs the interpretation of the

bill of lading contracts.

Under the law of Spain, and as is established by the accompanying Declaration

of Jose Maria Alcantara, a pre-eminent Spanish maritime lawyer, the bill of lading would be

governed by English law, resulting in no incorporation. (See Ginsberg Declaration).

Moreover, under the law of Spain, (which governs the bills of lading both ex

contractu and under a choice-of-law analysis), the charterparty arbitration provision is binding

on the charterparty's signatories only; it does not apply to non-signatories, such as the plaintiff

or its subrogor. (See Alcantara Declaration ¶ 3B).  Furthermore, Spain would apply English law

to determine the issue of incorporation of the charterparty into the bills of lading (Alcantara

Declaration  ¶  3H)(Under English law, there is no valid incorporation-See Ginsberg

Declaration).  Finally, under Spanish law, the charterparty arbitration agreement contained in

charterparty Clause 32 was not effectively incorporated into the bill of lading for two reasons:

> i.    The parties to the bill of lading and
> charterparty, respectively, are different.
> Article 6.2 of the Spanish Arbitration Act
> 1988 permits an arbitration agreement to be
> incorporated by reference to related
> documents, but only when those documents
> involve the same named parties.  That is not
> the situation in the case at bar; and

> ii    The will of the shipper or the holder of the
> bill of lading to arbitrate under the contract
> of carriage must be explicit or inferred
> without doubt.  Articles 5.1 and 6.1 of the
> Spanish Arbitration Act 1988 require that
> such expression of will or intent to arbitrate
> must be executed in writing and must be

> "unequivocal." That specific express intent is lacking here. (Citations to Spanish legal authorities omitted)(Alcantara Decl. ¶ I).

Presumably, defendants will now be forced to argue that United States law (rather than Spanish or English law) should apply to this incorporation issue. See <u>Duferco Steel Inc. v. M/V KALISTI</u> 121 F.3d 321 (7th Cir. 1997) and the cases that followed that decision.[1] But <u>Duferco</u> (which interpreted the same bill of lading language here at issue) only applied United States law <u>by</u> <u>default</u>:

> Indeed, the bills of lading provide that the Hague Rules...as enacted in the country of shipment shall apply to this contract" and that, if "no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply." The parties agree, and we shall assume, that neither Italy nor Canada has implemented the Hague Rules. Therefore, under this contractual provision, United States law, specifically COGSA, applies to the bills of lading" <u>Id</u>. at 325.

<u>Duferco</u> involved a shipment from Italy to Canada and the U.S.    Again, and since the Court found that Italy had not enacted the Hague Rules, United States law would apply (as "the country of destination"), <u>by default</u>.  Here, and because Spain has indeed enacted the Hague Rules, (and the Hague-Visby Rules-See Alcantara Declaration) there is no such default and U.S. law is therefore inapplicable.  Put simply, Spanish law governs here and under the law of Spain, there is no effective incorporation of the arbitration provision.  (See accompanying Declaration of Jose Maria Alcantara detailing relevant Spanish law).

Defendants' arguments, found at pages 4 through 9 of their Memorandum of Law, rest entirely upon inapplicable American law.  None of these cases address the issue

---

[1] <u>Steel Warehouse Co. v. Albalone Shipping</u> 141 F.3d 234 (5th Cir. 1998); <u>Hawkspere Shipping v. Intamex</u> 330 F.3d 225 (4th Cir. 2003).

under the controlling Spanish or English law.  As such, defendants' arguments are unavailing

and must be rejected.

## CONCLUSION

Since there is no incorporation of the charterparty arbitration provision into the

subject bills of lading, there are no grounds to warrant any stay of this action.  Simply put, the

arbitration provision does not bind plaintiff and the defendants' motion should therefore be

denied in its entirety.

Dated: Eastern, Connecticut
        March 12, 2004


Respectfully submitted,

LOVEJOY & ASSOCIATES

By _____
     Frederick A. Lovejoy, Esq. (CT0319 )
     276 Center Road
     Easton, Connecticut 06612
     (203) 459-9943


TO:    Patrick F. Lennon, Esq.
       Tisdale & Lennon LLC
       10 Spruce Street
       Southport, Connecticut 06890


       TYLER, COOPER & ALCORN
       205 Church Street
       P.O. Box 1936
       New Haven, Connecticut 06509-1910

6

<u>CERTIFICATION</u>

THIS IS TO CERTIFY that a copy of the foregoing was sent via U.S. Mail on March 12, 2004, to:

S. Peter Sachner, Esq.
Tyler Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, Connecticut 06509-1910

Patrick F. Lennon, Esq.
Tisdale & Lennon LLC
10 Spruce Street
Southport, Connecticut 06890

Frederick A. Lovejoy

1