UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------X
FORTIS CORPORATE INSURANCE       :
(as subrogee of TRADE ARBED, INC.),
                                 :
          Plaintiff,             :          3:02CV1991 (CFD)
                                 :
   -against-                     :
                                 :
M/V LANGESUND, her engines, boilers, tackle,
appurtenances, etc. <u>in rem</u>, LANGESUND, D.A.,  :
ATLANTIC ICE CARRIERS, B.V., LOGISTEC            April 16, 2004
CONNECTICUT, INC., and LOGISTEC USA, INC.:
<u>in personam</u>,
                                 :
          Defendants.
----------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY
PENDING ARBITRATION AND MOTION TO DISMISS CROSS-CLAIMS**

ORAL ARGUMENT REQUESTED/
TESTIMONY NOT REQUIRED
                    **PRELIMINARY STATEMENT**

Defendants Langesund, D.A. (hereinafter "Langesund") and Atlantic Ice Carriers, B.V. (hereinafter "AIC"), by their undersigned counsel, submit the within Reply Memorandum of Law in support of their motion to stay the claims of the plaintiff, Fortis Corporate Insurance (hereinafter "Fortis" or "Plaintiff"), pending arbitration in the City of London, England, and also in support of their motion to dismiss cross-claims of Logistec Connecticut, Inc. and Logistec USA, Inc. (hereinafter collectively "Logistec").

The plaintiff's efforts to distract this Court from the fact that the bills of lading governing plaintiff's claims validly incorporate a charter party and its arbitration clause are unavailing and plainly contrary to well-established case law directly on point – most recently the Second Circuit's decision in *Continental Ins. Co. v. Polish Steamship Co.*, 346 F.3d 281 (2d Cir. 2003). The bills of lading in this case, issued on the commercially recognized CONGENBILL form, are identical to those involved in the *Continental Insurance* case. For example, they contain the same incorporation clause ("[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated"), state on their face that they are "to be used with charter-parties," and specifically reference the subject charter party date. (See Declaration of Brent Z. Skolnick ¶¶ 1 – 3, Exhibits "1" – "3").[1] The issues raised in the plaintiff's opposition memorandum are at best irrelevant and confounding, and at most intentionally designed to mislead the Court and thus should be rejected.

---

[1] Hereinafter abbreviated as (Skolnick Dec. ¶ _, Exh. __).

# ARGUMENT

## POINT I

### ENGLISH LAW IS INAPPLICABLE - WHETHER THE BILLS OF LADING INCORPORATE THE CHARTER PARTY IS A QUESTION GOVERNED BY U.S. LAW

As discussed in the moving defendants' supporting memorandum, arbitration clauses are generally given full effect where a charter party is incorporated by reference in a bill of lading, and the terms and conditions of that charter party, including any arbitration provisions, govern claims made under the bill of lading even as against non-signatories to the charter party. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 1995 AMC 1817, 1827 (1995); *Steel Warehouse Co. v. Abalone Shipping Ltd.*, 141 F.3d 234, 238, 1998 AMC 2054, 2059 (5th Cir. 1998); *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 1952 AMC 1931, 1933 (2d Cir. 1952).

Yet, instead of addressing the relevant and controlling case law cited in Langesund and AIC's memorandum, plaintiff first puts the cart before the horse by arguing that under the charter party, which it contends is *not* incorporated in the bills of lading, "it is indisputable that English law governs[2]," (Plaintiff's Opposition Memorandum at 2), only to later argue that there is no incorporation of the charter party under English law. (Pl.'s Opp. Memo. at 3). Obviously, if the bills of lading do not incorporate the charter party, then English law cannot govern any aspect of this case, including the question of whether the bills of lading incorporate the charter party. Plaintiff's flawed, circular logic thus fails to address the fundamental question of what law governs the question of whether the bills of lading incorporate the charter party at all.

---

[2]   Plaintiff 's reference to the "contract" is to the charter party, not the bill of lading. Langesund and AIC's arguments are premised entirely on the governing bill of lading contract, which clearly incorporates the terms and conditions of the charter party. They do not rely on the charter party as a stand alone contract.

It may well be that an English arbitrator would rule that Plaintiff's substantive claims are governed by English law under the terms and conditions of the charter party contract. That fact, however, does not address whatsoever the question presented by Langesund and AIC's motion, *i.e.* whether as a matter of United States general maritime law the governing bill of lading contracts of carriage, upon which plaintiff's claims are premised, incorporate the terms and conditions of the November 13, 2001 charter party. (Skolinick Affidavit, Ex. "3"). Clearly, if the bills of lading incorporate the charter party, as Langesund and AIC contend they do under controlling Second Circuit precedent[3], then plaintiff's claims are subject to arbitration in London pursuant to the charter party arbitration clause. However, as a result of its flawed analysis regarding English and Spanish law, plaintiff fails completely to address the issue under United States law.

Plaintiff's patently circular reasoning is as confusing as it is troubling and is, in any event, wholly without merit. *See Duferco Steel Inc. v. M/V KALISTI*, 121 F.3d 321 (7th Cir. 1997); and *Steel Warehouse Co. v. Abalone Shipping*, 141 F.3d 234, 238 (5th Cir. 1998).[4] In *Duferco*, under an identical general clause paramount set forth in the bill of lading contract of

---

[3]   *Continental Ins. Co. v. Polish Steamship Co.*, 346 F.3d 281 (2d Cir. 2003), *supra*.

[4]   The *Steel Warehouse* court adopted the *Duferco* court's reasoning, stating:

> The district court did not rule on several other issues, because of the result it reached on the points already mentioned. We will deal with these issues now. First, Steel Warehouse argues that the incorporation issue should be governed by British law, because British law governs the charter party, and under British law the incorporation of the charter party in the bill of lading was inadequate. The Seventh Circuit rejected this type of analysis in *Duferco Steel, Inc. v. M/V KALISTI*, 121 F.3d 321, 325 (7th Cir. 1997), and we adopt the Seventh Circuit's view on this matter. As the Seventh Circuit stated, such an analysis skips an important initial question, namely, whose law governs the issue of incorporation to begin with? The Seventh Circuit concluded that "there is no reason to suppose that the incorporation issue should be governed by English law" in *Duferco,* and we agree with this method of analysis in the instant case. *Id.* Essentially, Steel Warehouse is attempting to incorporate the arbitration clause into the bill of lading at the beginning of its analysis, only to find that the clause cannot be incorporated. This rather convoluted analysis was rejected in *Duferco*, and we reject it here. *See Id.* American law governs this agreement, for the purposes of incorporation.

*Steel Warehouse*, 141 F.3d at 238.

carriage the plaintiff made the identical argument to the argument plaintiff makes in this case.

The court summarized the plaintiff's argument as follows:

> [t]he bills of lading incorporate the charter party's terms; one term of the charter party is that English law shall govern arbitration; that term of the charter party means that the English rule of incorporation is incorporated into the bills of lading; the English rule of incorporation would not permit the charter party's arbitration clause to be incorporated into the bills of lading; and therefore the district court should have allowed [plaintiff's] suit to go forward.

*Duferco,* 121 F.3d 325. In flatly rejecting the argument, the *Duferco* court reasoned:

> We cannot accept this argument. Its circularity reveals that it misses an important analytical step. Before making an initial decision on the appropriate choice of law to govern the incorporation of the charter party's arbitration clause into the bills of lading, [plaintiff's] argument immediately incorporates the arbitration clause into the bills of lading and then maintains that, on the basis of the arbitration clause that was just incorporated, the arbitration clause cannot be incorporated into the bills of lading. In short, in [plaintiff's] view, it is permissible to incorporate the arbitration clause into the bills of lading in the first instance, but only to find out that the arbitration clause cannot be incorporated. Accepted choice of law methodology permits a far less convoluted view of the parties' agreement. This methodology requires that we first determine the governing law with respect to the issue of incorporation. This initial and independent step, not a part of [plaintiff's] tendered analysis, is, as the district court recognized, crucial.

*Duferco*, 121 F.3d at 325. The court then went on to determine the governing law with respect to the issue of incorporation, stating:

> [u]pon examination of the bills of lading and the circumstances of the case, we conclude that there is no reason to suppose that the incorporation issue ought to be governed by English law. Nothing in the bills of lading provide that the "Hague Rules . . . as enacted in the country of shipment shall apply to this contract" and that, if "no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply" . . . . and we shall assume, that neither Italy nor Canada has implemented the Hague Rules. Therefore, under this contractual provision, United States law, specifically COGSA, applies to the bills of lading.

*Id.*. The outcome in this case can be no different, despite plaintiff's protestations to the contrary. "United States maritime law governs the issue of whether a charterparty has been properly incorporated into a bill of lading." *Hawkspere Shipping v. Intamex, S.A.,* 330 F.3d 224, 234 n. 6

(4th Cir. 2003)(*quoting* Steel Warehouse Co. v. Abalone Shipping Ltd., 141 F.3d 234, 238, 1998 AMC 2054, 2059 (5th Cir. 1998).

## POINT II

### PLAINTIFF'S VIEW THAT SPANISH LAW APPLIES TO THE EXCLUSION OF US LAW IS UNSUBSTANTIATED UNDER THE CARRIAGE OF GOODS BY SEA ACT AND UNDER EXISTING CASELAW

Plaintiff also argues incorporation of the charter party into the bill of lading in this case is improper under Spanish law, which it urges is applicable "ex contractu and under a choice of law analysis" to the exclusion of U.S. law. (Pl.'s Opp. Memo at 4). The Hague-Visby Rules as enacted in Spain, plaintiff argues, apply by virtue of the General Clause Paramount as set forth in the bills of lading. (Declaration of Jose Maria Alcantara ¶ 3E). The plaintiff also contends that choice of law considerations militate in favor of ignoring U.S. law. Plaintiff is badly wrong on both points.

In making these arguments, plaintiff seeks to circumvent the unfavorable result it faces on this motion under United States law and COGSA by claiming the applicability of a legal regime which is neither in effect in this country nor has ever been applied by a U.S. court. The proceeding before this court is undoubtedly governed by United States general maritime law, and COGSA. 46 U.S.C. appx. § 1312. Notwithstanding its view that Spain's version of Hague-Visby Rules applies, plaintiff cannot cite to any U.S. precedent where the court applied foreign law and another legal regime to the complete exclusion of United States general maritime law and COGSA where COGSA is compulsorily applicable.[5] Even if such precedent exists, which is denied, plaintiff cannot point to any explicit agreement by the parties to apply Spanish law.

---

[5] It should be noted that while contracting parties may agree to increase the carrier's liability under COGSA, the parties may not displace COGSA when applicable by force of law. *See e.g., Ilva U.S.A., Inc. v. M/V Botic*, 1992 U.S. Dist. LEXIS 16663, 1993 AMC 240, 243-44, 1992 WL 296562 (E.D. Pa. 1992) (finding mutual intent to raise $500 limitation of U.S. COGSA where goods carried from Italy to Philadelphia) and *Encyclopaedia Britannica v. SS*

In any case, it is beyond cavil that U.S. law, namely the Carriage of Goods by Sea Act, 46 U.S.C. Appx. § 1300 *et seq.* (hereinafter "COGSA"), applies exclusively by force of law. Section 1312 of COGSA provides that the Act applies to "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." *See*, 46 U.S.C. Appx. § 1312; *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145, 153 (2d Cir. 2002). Moreover, "[r]egardless of any provision to contrary [sic] in the bill of lading or any rule to the contrary under foreign law . . . the parties do not have the freedom to displace COGSA with another regime.[6]" *Itel Container Corp. v. M/V Titan Scan*, 1996 U.S. Dist. LEXIS 21390, 23-24 (S.D. Ga. 1996) (*quoting* 2A-V Benedict on Admiralty § 46 (2003)), *aff'd in part & rev'd in part on other grounds*, 139 F.3d 1450, 1998 AMC 1965 (11th Cir. 1998), *cert. denied*, 525 U.S. 962, 119 S. Ct. 405, 142 L. Ed.2d 328 (1998).

While it certainly had the opportunity to bring this action in Spain, plaintiff voluntarily chose this forum where United States general maritime law applies and COGSA is compulsorily

---

*Hong Kong Producer*, 422 F.2d 7, 12 (2d Cir. 1969) (citing 46 U.S.C. § 1303(8) and explaining that "COGSA allows a freedom of contracting out of its terms, but only in the direction of increasing the shipowner's liabilities, and never in the direction of diminishing them").

[6]     As to this point, Benedict on Admiralty explains that :

This does not necessarily render the clause paramount irrelevant, for COGSA does grant the parties a limited freedom of contract. Under section 3(8), the bill of lading may not *reduce* the carrier's liability, but there is no legal reason why a provision in the bill of lading may not *increase* the carrier's liability. To the extent that the carrier agrees to be bound by the more onerous aspects of the Hague-Visby Rules, there is nothing in COGSA to prevent it. Should a clause paramount, such as the one quoted above, be read in this fashion? In particular, should it be read as increasing the package limitation from $ 500 to the higher Visby levels, as authorized in the second paragraph of section 4(5)?

Despite some problems with this analysis, several courts have implicitly or explicitly accepted it and held carriers liable at the higher Visby levels on shipments to the United States. In essence, the carrier is saddled with the less favorable aspects of each regime. To the extent that COGSA imposes a greater burden, the purported selection of the Hague-Visby Rules is ineffective under section 3(8). But to the extent that COGSA offers the carrier greater protection, the selection of the Hague-Visby Rules is permitted as a contractual assumption of heavier liability on the carrier's part."

2A-V Benedict on Admiralty § 46 (2003)),

applicable to all of its claims made under the governing bills of lading. In fact, a reading of the COGSA cause of action alleged in the Amended Complaint belies any argument that the plaintiff did not expect COGSA to apply. (Skolnick Dec. ¶ 4, Exh. "4"). Accordingly, COGSA and United States law do not apply merely "by default," (Pl.'s Opp. Memo. at 5), but by force of law.

It is against this background that Plaintiff's arguments must be assessed. Plaintiff's argument fails to account whatsoever for the fact that COGSA applies *ex proprio vigore* to the governing bills of lading and, accordingly, cannot be replaced with Spanish law, regardless of any provision in the bill of lading to the contrary. 46 U.S.C. Appx. § 1312; *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145, 153 (2d Cir. 2002); and *Itel Container Corp. v. M/V Titan Scan*, 1996 U.S. Dist. LEXIS 21390, 23-24 (S.D. Ga. 1996) (*quoting* 2A-V Benedict on Admiralty § 46 (2003)), *aff'd in part & rev'd in part on other grounds*, 139 F.3d 1450, 1998 AMC 1965 (11th Cir. 1998)**,** *cert. denied*, 525 U.S. 962, 119 S. Ct. 405, 142 L. Ed.2d 328 (1998).

Moreover, the fact that Spain has adopted and applies the Hague-Visby Rules (*see* Alcantra Dec. ¶ 3(C)) actually flies in the face of plaintiff's argument. In an effort to twist the terms of the bill of lading General Clause Paramount in its favor, Plaintiff actually contends that Spain has adopted *both* the Hague Rules *and* the Hague-Visby Rules. This is clearly wrong, as established by the Declaration of Jose Marie Alcantra, submitted in support of plaintiff's opposition to the subject motion, where it states: "the Hague Rules 1924 are not enforceable any longer" in Spain. (Alcantra Dec. ¶ 3(E). The result is that under the express terms of the bill of lading General Clause Paramount, COGSA applies as a matter of contract, in *addition* to the fact that it applies by force of law, as is set forth above. Specifically, the General Clause Paramount states, in pertinent part:

> The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply . . . .

Because the Hague Rules are not in force in the "country of shipment," *i.e.* Spain (Alcantra Dec. ¶ 3(E), and because they are in force in the "country of destination," *i.e.* the United States, as enacted by COGSA[7] and United States general maritime law undoubtedly govern this dispute.

## POINT III

### PLAINTIFF'S CLAIMS MUST BE STAYED PENDING ARBITRATION IN LONDON

As the foregoing arguments and authorities establish, whether the governing bills of lading incorporate the November 13, 2001 charter party (*see* Skolinick Affidavit, Ex. "3") is governed by the United States general maritime law. Under United States general maritime law, there is no doubt, at least in the Second Circuit, that the answer to that question is in the affirmative. *See Continental Ins. Co. v. Polish Steamship Co.*, 346 F.3d 281 (2d Cir. 2003). Accordingly, Langesund and AIC's motion to stay must be granted because plaintiff's claims are subject to London arbitration, as required under the arbitration clause contained in the November 13, 2001 charter party which is incorporated by reference in the bills of lading governing plaintiff's claims.

## POINT IV

### THE CROSS-CLAIMS SHOULD BE DISMISSED

In their March 26, 2004 response to Langesund and AIC's motion, the Logistec co-defendants concede that if the Court grants Langesund and AIC's motion to stay the Plaintiff's

---

[7] COGSA was "lifted almost bodily from the Hague Rules." *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145 (2d Cir. 2002) (*quoting Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 301, 3 L. Ed. 2d 820, 79 S. Ct. 766 (1959).

claims pending London arbitration that their cross-claims may be dismissed. Thus, should the Court grant the motion to stay plaintiff's claims, there is no sound reason why the Logistec co-defendants' cross-claims should not be dismissed.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the January 23, 2004 Memorandum of Law submitted by Defendants Langesund and AIC, the Motion to Stay pending London arbitration and the Motion to Dismiss Cross-Claims should be granted.

> Respectfully submitted,
>
> Defendants,
> LANGESUND, D.A. and
> ATLANTIC ICE CARRIERS, B.V.
>
>
> By:_____
> Patrick F. Lennon (CT 11950)
> Brent Z. Skolnick (CT 24076)
> TISDALE & LENNON, LLC
> 10 Spruce Street
> Southport, CT 06890
> (203) 254-8474
> (203) 254-1641 (Fax)
> PLennon@tisdale-lennon.com
> BSkolnick@tisdale-lennon.com

## CERTIFICATION OF SERVICE

I, Brent Z. Skolnick, an attorney duly admitted to practice before this honorable court, affirm that on this 16th day of April, 2004, I served a copy of the foregoing via United States Postal Service, first class postage prepaid, to:

Frederick A. Lovejoy, Esq.
Lovejoy & Associates
276 Center Road
Easton, CT 06612

S. Peter Sachner, Esq.

–11–

Tyler, Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT  06509-1910

                                                                                                                                         _____

                                                                                                                                         Patrick F. Lennon